Department of the Army. Mr. Maloney, you can begin when you're ready. Yes, good morning. James Maloney with the petition of William Lee. I would like to concentrate on our second issue, which has to deal with the penalty imposed upon Mr. Lee. I mean, my primary concentration. I would suggest to the court that that penalty was motivated by a consideration of an improper factor, which is essentially Mr. Lee's failure to admit his drug usage. In one of the cases cited by Administrator Judge Cook in his initial opinion, in support of his decision that one instance of drug usage can justify the removal of an employee, that case, and I think it's Jones v. Department of the Navy, Mr. Lee also finds that you cannot use an employee's denial of drug use, or conversely refusal to admit drug use, as an aggravating factor. And it's clear, I'm not trying to claim that Judge Cook used this as an aggravating factor in this case, but instead what he used it was as the principal factor in rejecting Mr. Lee's claim that he had been rehabilitated. In fact, that's the only factor he used in rejecting it. And this is where I believe that the Drug-Free Workplace Executive Order, promulgated by President Reagan back in the 1980s, which is 12564, has some importance to this case. We don't claim, although it was done in the original plea that was submitted to Judge Cook by my predecessor counsel, that the Drug-Free Workplace Executive Order prevents Mr. Lee from being prosecuted in this case. It's clear that he was not the kind of person who turned himself in. And what that Drug-Free Workplace Executive Order provides is if you turn yourself in, and you successfully complete the drug program, and you don't test positive again, you are fit for duty. And the only difference between Mr. Lee and the persons who avail themselves of that Drug-Free Workplace Order is that he did not turn himself in, but he completed the... It's a pretty big difference. But it doesn't do... I would suggest it doesn't affect the question about whether or not you rehabilitate. The difference, and it is a big difference, it affects whether or not you have to be... you're submitted or you're subjected to an adverse action. I would suggest that that's the only difference, because there's never been any articulation as to how a failure to turn oneself in somehow affects one's rehabilitative prospects to the extent that there should be some evidence of that. It's not in the record. I would suggest it's not something that's so commonly known or notoriously known that any judge can take judicial notice of. But this is a dilemma that's encountered by criminal defendants all the time. Somebody says, you know, I'm going to get some extra credit for purposes of sentencing if I come in and I say, yeah, I'm really sorry for what I did, but my position is I didn't do it. Therefore, isn't it a double whammy to both convict me for something I didn't do and then subject me to additional jail time above what I would have gotten in if I admitted it and said I'm sorry, when my position all along has been I didn't do it. If your client is arguing that there ought to be equal credit for someone who comes in and says, yes, I'm sorry, and I've taken the following steps to change my life or whatever versus someone who never admits the culpability for the act, why shouldn't the first person get more of a break on the rehabilitation fact? Well, again, that may be a whole separate issue from rehabilitation, and that's why I talk about the sentencing guidelines, which is something I'm familiar with. Ring a bell. Yes. Acceptance of responsibility certainly is, in the sentencing guidelines, is a separate entity to an extent, but it certainly is not irrational to say that rehabilitation turns to some extent as a first step a willingness to accept responsibility and proceed from there, don't you think? Well, yes, but one could presume that willingness to accept responsibility by Mr. Lee's decision to follow the orders of his immediate supervisor, which was to go into the drug-tripping program, and his completion of the drug-tripping program, and his failure to test positive for the test that occurs at the end of the drug-tripping program prior to one's restoration to duty, the fact that he's restored to duty without any problems for about a month, and the fact that he is going to be subjected for the next year to a series of at least six random drug tests, he has, and this is why I wanted to... Well, you can't claim it's detrimental reliance in any sort of way. He benefits from that, right? No, that's not a position at all. It's my belief that I was necessarily, because he was required to do that anyways. If he didn't do that, and just said, I'm not going in the program, and then came before an administrative judge or before his court saying, well, I was still rehabilitated, he wouldn't say you can't be rehabilitated because you refused to go into a rehabilitation program. That's what was considered in the Social Security Administration v. Davis, which was the Lutheran City's administrative judge, who said that, well, I don't have to go into any particular program. I have a hit-and-run test. Well, let me ask you, just stepping back a minute from the details of what we've been arguing. You know, we've got all of these cases that deal with if the board or we only hold up one of two specifications out of four, and what do we do with respect to the penalty. It seems to me, reading the A.J.'s opinion, that there were a whole lot more factors that were weighed in terms of assessing the seriousness of conduct and the penalty than just the question of rehabilitation. Am I wrong on that? I mean, they talked about the seriousness of the offense and matters such as that. So it seems to me, where does it leave you? I mean, even if we were to have some sympathy for your argument, are you suggesting we'd have to remand it to the deciding official again to do a do-over? Well, no. In the board's case, the Omidy's case, it says essentially that if the deciding official fails to follow the Douglas factors, as was finally the case here, then the administrative judge essentially imposes his judgment of the most rational, most reasonable penalty. And that's an interesting way about how one uses precedent in cases like this because the cases cited by Judge Cook in support of removal all deal with deferral by the board to the decisions of the agencies. It's not that the board, and this is why I've cited Wagstaff in this court, but the board says the same thing in other cases, that it's not like we think that was a good penalty or a particularly reasonable penalty. It's because if the agencies consider the Douglas factors and if the penalty is within the range of available penalties, we're going to defer to that decision even though we may think it's unreasonable. But when you get to the Omidy's analysis, I suggest that all deference is off and that you should not be using prior cases in support of your decision where those cases arise from not a decision of the Merit System Protection Board that those penalties are particularly proper or reasonable. It's that they were permitted and sort of similar to using cases of harmless error to prove that there was no error thereafter. The Douglas factor, did he continue to protest his innocence while he was going through the rehab program? No, it's a practical matter. No, Your Honor. When we appeared at the hearing of the record sheet, the only thing that Mr. Mead testified about was essentially issues relating to the estopel argument and whether or not he relied upon representations of the supervisor, Mr. Brown, and then went in and completed his program. And he was cross-examined on whether or not he was aware of the necessity to drug test and things like that. But I thought before the board his position was that the test was an error. It was a false positive and so forth. Again, that was in the pleadings. That was. I believe. Well, he never backed away from that position. That's true. If it's in the pleadings, it's authorized effectively as his position, I think. Because I'm thinking, trying to compare this with the criminal arena, he shouldn't be penalized for asking the government to prove that he took the drugs. On the other hand, part of rehabilitation is if, in fact, he took the drugs, that he has to acknowledge there's a problem. So I understand I'm straddling two very close areas, but it strikes me he protested all the way through, right? This wasn't just putting the government to its burden. Well, he protested the following. Number one, I shouldn't have been tested because I don't properly have a C.P.I. Number two, the testing program is violated with the Fourth Amendment. Number three, there may be disparate penalties, discrimination on the basis of race or just the basis of the position within the organization. And last, I didn't take them. That's right. And it was a false positive. That's right. That was in the pleadings. I could see that the pleadings followed by his original counsel, and I did not withdraw them for a period of time. But those weren't seriously argued, and I think the fact that they weren't seriously argued and seriously testified to by my client should not be leading to a conclusion, ineligible or otherwise, that he was not taking responsibility for his actions. He went in to the government-mandated program, the agency-mandated program, which although we don't have any proof of what goes on in those programs, we can speculate, too, to the same extent that his failure to accept responsibility shows it can't be rehabilitated, I would suggest that the first step on admission and completion of that program is to admit that one has a drug problem. And he may not be admitting that on a particular day, January 2, I was using drugs, but in the program he admits I'm using drugs. He completes the program. What's the time span of the program? How long was the program? The program took about a month or so. And did he commence the program before or after he got the notice of proposed removal? I believe he commenced it after. He was removed from his duty. Actually, he was temporarily removed. And then I think two weeks after he got that letter of temporary removal, he got the proposed removal letter, right? I think that's correct. The final decision was until several months later after he'd been interned in duty. Right. So he commenced the one-month program after he got the notice of proposed removal? Well, I think he may have been ordered into the program, actually, when he was temporarily removed from duty because that's consistent with the agency policy. Whenever there's any suspicion of drug usage, we order people into the program. Right. And, again, I'm not trying to claim that he can avail himself of anything under the executive order, but the executive order, I would suggest,  is not unfit to drive a commercial vehicle for the Department of the Army. That's why you have a program in there. The difference between Mr. Lee and other people who go through that program is the persons who voluntarily admit themselves are not subject to any kind of sanction. And what I'm saying is that once the decision was left to Judge Cook under amites, he should have looked at the program and said, the program says, the Army says in Executive Order 12564 says, if you complete the program and continue to test negative, you are fit to drive a vehicle for the Department of the Army. If I could interrupt you, Mr. Maloney, for a moment. You're into your rebuttal time. I just want to see if you want to save it. I will. Okay. Did you want to finish the point you were making? Was that the conclusion of your point? I don't think I left out anything. Very well. We'll save the rest of your rebuttal time then. And we'll hear from Mr. Kessler. Good morning. Good morning. Of course, this is a case where, as Judge Post recognized, the administrative judge did consider other factors besides the lack of remorse. And I would also disagree with the characterization that classifying the appellant as having a petitioner as having a lack of remorse is actually a punishment or a double punishment. Instead, what the administrative judge did clearly was consider the Douglas factors, as did the agency. The reason that the administrative judge considered the Douglas factors himself is that he found that the deciding official felt overly compelled to remove Mr. Lee despite any mitigating factors. So that did involve, it did entail a judge balancing and weighing the factors himself, which is fully improper. It seems like the problem in this case, however, is we see a lot of these cases and everybody routinely says what the Douglas factors are or whatever, and including they discuss the potential for rehabilitation. But typically in these cases, that's kind of subjective judgment. There's no real solid basis to predict the potential for rehabilitation, so someone just makes a judgment about whether there is or there isn't. In this case, on the other hand, on the question of potential for rehabilitation, you actually have the government have put him in a program for rehabilitation, which presumably the government spends a lot of money on, considers worthwhile, considers therapeutic, and considers to have some result. So it is different and a little unique to actually have rehabilitation done in a particular case and then to have that factor thrown the other way, is it not? Well, I have to dispute somewhat the characterization of the evidence that's in the record about his rehabilitation. The agency didn't submit any evidence about his rehabilitation because I don't think the agency has. I mean, we know he went to the program. Well, he went to an official government rehabilitation program and he completed it. Is there any dispute that it was completed successfully? I don't know how that's defined, but he completed it. I don't know how that's defined either. There's no dispute because the record is actually very thin, even from Mr. Lee's perspective as to putting forth his rehabilitation, what the program consisted of. I'm not sure it did consist of a month. I recall talking about a couple of days of classes. I do know he did have to, it's true, he did have to subject himself to subsequent drug tests in which he was negative. But he didn't put on a heavy defense that he'd been really rehabilitated. It was only one of a number of issues, and as the court has pointed out, he did contest whether that was a false positive. He did contest whether he'd gotten procedural due process. He basically asserted affirmative defenses, and it was not that he'd been rehabilitated and that he was remorseful. Now, what the administrative judge did look at was other factors, including the nexus. In fact, Mr. Lee didn't really challenge whether there was a nexus between his employment and the removal on the basis of drug use. And that's a very strong factor, and it's not disputed, and it can't be disputed that there's a direct relationship between a driver at a medical center of wheelchair-bound patients and families that he presents a significantly increased risk if he's an active drug user and he's found as a result of a random drug test. He didn't turn himself in. Of course, if he had turned himself in to the program and had gone through that rehabilitation, he would have been assured of being able to return back to service. So this isn't a case where... Except for the driving position? I believe so, as long as he did successfully complete the program. The Department of Defense regulations provide an exception. While the Department of Defense regulations require disciplinary action against somebody who is found to have failed a drug test, including the discipline of removal, including on a first offense, this is all explicitly laid out in the Department of Defense regulations, including after an employee has gone through the assistance program. So the Department of Defense, in anticipation of how they're going to treat their employees, and especially one who has to have a commercial driver's license and one who has to submit to random drug testing pursuant to the Department of Transportation, and particularly somebody who knows that they have to stay drug-free and that that's a condition of their employment, that it's clear that, in that situation, an agency must be able to trust their employees. And it was within the bounds of reasonableness to remove him. Do you think it was the mere fact that someone refuses to admit it at the hearing is enough to say you can't be rehabilitated? Well... As opposed to afterwards, I understand if... But one of the things that the judge pointed out is that none of the appellants have ever taken any responsibility for their misconduct. Then it says at the hearing, then another guy refused to admit he used the drug. So do you equate rehabilitation with admitting it at the hearing? I don't want to give a personal opinion,  and so I don't think what the judge did was balance the factors and say, well, because they didn't admit it, they must be removed. What he did was he determined that because the violation goes to the heart of their duties, safety, and that the reason for prohibiting drug use is to ensure safety, and because the agency had lost trust in all the drivers, including Mr. Lee, and the administrative judge focused on the seriousness of the misconduct and the nexus between his job and the violation, and the fact that it is covered by Department of Defense regulations to remove him on a first offense. And so what I think the judge did is he found that to be an overriding consideration. Now, maybe the judge, maybe the court will find that that's not a valid conclusion on the judge on the part of the lack of remorse being connected to failure to be rehabilitated. Well, but just back to your point in Judge Serris' question, the finding of a poor prospect for rehabilitation, was that based solely on the fact that they didn't admit it, their failure to admit it? It would appear from the record and from the judge's decision that there's nothing else you can point to. I can't speak to it. I can just say that based on reading the transcript and reading the judge's decision, he doesn't identify any other basis or testimony that identified, you know, a poor prospect for rehabilitation other than his own analysis. But it's proper for him to balance all the factors. And, in fact, the agency deciding official, when he went through his checklist of the Douglas factors, actually found that the potential for the employee's rehabilitation to be a mitigating factor. Of course, his decision is not entirely – his conclusion is not entirely deference. But it's not that this is a conspiracy on the part of the agency or a conclusion on the part of the agency to punish these people despite their ability to be rehabilitated. I think what the agency is coming from is the other factors, including what was the clarity of the rule that prohibited this conduct. And it's very exceedingly clear that these drivers – all federal employees cannot take drugs. But it's exceedingly clear that these drivers are going to be subject to a random drug test and that their employment as a driver is conditioned on those results being negative. So it's exceedingly clear, and that's a Douglas factor. It's also important about how the agency views itself as far as how it deals with drivers who have been caught through a random drug test to be violated. And in this case, the deciding official did indicate that he thought it was important that the agency maintain its highest standards and safety of the patients have to come first, and that that was the basis for removal. Anything else? The only other thing I would add is that in the brief, Mr. Lee's counsel does suggest that the executive order for a drug-free workplace in America does prevent a removal on a first violation, and the order clearly does not say that. It's silent as to that. And that's a more generalized government-wide policy. The Department of Defense already has a more specific policy in place that permits the removal and requires disciplinary measures. I would also just add that Mr. Lee understood and recognized in this hearing that he was going to be subjected to some type of penalty even following his assistance. David. Thank you, Mr. Kessler. Now, Mr. Maloney, you have a couple of minutes of your rebuttal time left if you want to use it. Yes, Your Honor. Just briefly, again, dealing with the whole punishment issue and the penalty issue, we now have, sorry for not mentioning it, Mr. Singh, when he originally looked at the case, he thought that maybe my client was rehabilitated or the rehabilitation was a part of it. You're going to raise the issue of the newly discovered evidence? Well, the newly discovered evidence, I can do that. Well, actually, because that wasn't raised in your opening or responded to, it wouldn't be appropriate rebuttal. That's why I was not going to do it. Okay, fine. The only other thing I want to say is essentially we have now several factors under Douglas which would militate against removal, such as at least some recognition by the agency that my client had engaged in efforts of rehabilitation. I would suggest when we consider it with the executive order program put in place, he has been rehabilitated as much as anybody else who avails himself of that order and his only punishment is subjective and adverse action. And second, there are other factors such as his length of service and his lack of any prior disciplinary matters which also militate against removal in this case. With regard to Judge Cook's consideration of the Douglas factors in the place of Mr. Singh, I'm not sure if more than that there's any explicit statement as to what the Army does at its various locations with regard to persons who are found to use drugs. As you know, before we go before the Minister and Judge and before the American Systems Protection Board, all we can do is deal with what the unit deals with, penalizes. I can't say that in Hawaii people are not terminated. They're only given six months. I have to look and see what Walter Reed does. And there's just no evidence at all on that other than the statements of Mr. Singh who believed that he was required to remove my client because of the nature of his offense and not considering any other evidence. But the only evidence of that statement was the newly decided evidence, correct? Well, no. I think what Judge Cook did in legalizing amicus to substitute his judgment for Mr. Singh was that Mr. Singh had said, and he didn't say that anyone was making him do it, he felt constrained by the nature of the offense that he must remove. I understand the distinction. The thing I'm struggling with is basically you're saying that a guy who never admitted he even took the drugs and only went into the drug treatment program at the suggestion of his supervisor to keep his job should essentially get credit for it on the Douglas factors. I'm really not arguing that. I'm saying that with regard to one of the Douglas factors that deals with rehabilitation or alternative form of sanction, the fact that he did not admit anything has no relevance, at least under the circumstances of this case, to whether or not he was rehabilitated. And it's a dangerous way to go because it almost looks like you're using it as a factor in aggravation. I agree. The sentence that referred to some other guy and said he even refused to admit it on the stand, you know, sort of worried me. But that having been said, you know, you've got to have something for rehabilitation. And when some guy's only doing it under the whip, it's hard to say that is rehabilitation. Well, I'm not sure how many people don't do it but under a whip. And even with regard to the persons covered under the executive order, there is a whip that follows them forever. Thank you. Thank you, Mr. Moy. We thank both counsel. The case is submitted.